**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHAWN MILNE,                      :
                                  : CIVIL ACTION NO. 97-2061 (MLC)
        Petitioner,               :
                                  :
        v.                        :     **MEMORANDUM OPINION**
                                  :
JEFFREY J. BURNS, et al.,         :
                                  :
        Respondents.              :
_____:

**COOPER, District Judge**

      This matter is before the Court on petitioner Shawn Milne's

petition for writ of habeas corpus, pursuant to 28 U.S.C. §

("Section") 2254.  The Court, for the reasons stated herein, will

deny Milne habeas corpus relief and the writ will not issue.

                           **BACKGROUND**

**I.   Procedural History**

      Milne, who was fifteen years old at the time of the offense,

was tried and convicted for the murder and sexual assault of a

thirteen-year-old girl in June of 1987.  (11-22-04 State Br. at

1-3; 10-5-04 Berman Letter, at 1-2.)[1]  Milne's "counsel

considered, but ultimately did not present, a diminished capacity

defense."  State v. Milne, 842 A.2d 140, 142 (N.J. 2004).[2]

_____

      [1]  The incident took place on November 12, 1985.  State v.
Milne, 810 A.2d 588, 593 (N.J. App. Div. 2002).

      [2]  Milne told Dr. Seymour Kuvin, a psychiatrist hired by the
defense, that he hit the victim over the head with a board
because she threw a knife at him and that he heard "weird voices
telling [him] to get rid of the body."  (State Ex. 12, 11-16-85
Psychiatric Evaluation, at 67A.)  Kuvin, in a report dated
November 16, 1985, diagnosed Milne as "suffer[ing] from an isolated
explosive disorder" at the time of the offense.  (Id. at 68A.)

Milne's counsel, instead, presented a theory of self-defense at trial. (11-22-04 State Br. at 2.)[3]

A judgment of conviction was entered against Milne on July 23, 1987 in the Superior Court of New Jersey, Ocean County, for knowing and purposeful murder in violation of N.J.S.A § 2C:1-3(a)(1) and aggravated sexual assault in violation of N.J.S.A. § 2C:14-2(a)(6). (10-21-99 Mem. Op. at 2.)[4] Milne was sentenced

---

Milne told Dr. Harriet Hollander, a clinical psychiatrist hired by the defense, that he had been hearing a voice for approximately one year before the incident that was "trying to drive the good out and put the bad in." (Id., 12-13-85 Psychological Evaluation, at 70A.) Milne told Hollander that "he heard the voice the night of the murder telling him things. The voice said, 'defend yourself-throw the board.'" . . . 'The little guy inside seemed to drive out the good.' Then the voice said, 'do it.'" (Id.) Hollander diagnosed Milne has having "atypical psychosis" at the time of the offense in a report dated December 13, 1985. (Id. at 72A.)

Milne told Dr. Robert Sadoff, a forensic psychiatrist hired by the State, a similar story. (Id., 6-1-87 Psychiatric Report, at 81A-83A.) Sadoff, however, found that Milne's account of the incident was inconsistent with the autopsy report and Milne's confession to the police. (Id. at 87A.) Sadoff concluded that Milne did not have a psychotic illness. (Id. at 88A.) Sadoff stated: "[Milne] is best described as having an antisocial personality disorder and, in my opinion, he is currently attempting to cover up his actions and to defend himself for what he has done to [the victim]." (Id.)

[3] Milne told the police, during a taped confession two days after the murder, that he hit the victim over the head with a board because she approached him with a knife. (State App., Ex. 23, Milne's Statement to Police, at Ra1-6.) Milne did not tell police officers during this confession that he heard voices at the time of the incident. (See id.)

[4] Milne was tried as an adult after the Superior Court of New Jersey, Appellate Division, reversed the trial court's denial of the state's application to waive jurisdiction of delinquency proceeding pursuant to N.J.S.A. § 2A:4A-26. (10-21-99 Mem. Op. at 2 n.1.)

to 30 years without parole and 20 years with parole eligibility, respectively, to be served consecutively.  (Id.)[5]

Milne appealed from the conviction and sentence to the Superior Court of New Jersey, Appellate Division ("Appellate Division").  (Id.)  He presented nine grounds of appeal, none of which are asserted in the instant petition.  (Id. at 3.)  The Appellate Division affirmed the conviction on October 13, 1989.  (Id.)  Milne, raising primarily the same issues as he did before the Appellate Division, filed a petition for certification with the New Jersey Supreme Court, which was denied on January 23, 1990.  (Id.)  The United States Supreme Court denied Milne's petition for writ of certiorari on October 1, 1990.  (Id.)

Milne filed a petition for post-conviction relief ("PCR petition") in the state trial court on July 21, 1992 (the "first PCR petition").  (10-5-04 Berman Letter, at 2.)  Milne sought relief on 3 grounds he was: (1) denied due process of law as a result of the unconstitutional statutory restrictions on the defense of diminished capacity; (2) incompetent to stand trial at the time of trial; and (3) denied effective assistance of counsel at trial because his trial counsel failed to: (a) request a court determination of his competency to stand trial and (b) assert a defense of diminished capacity.  (10-21-99 Mem. Op. at 3-4.)

---

[5] Milne was originally sentenced by the Superior Court, Ocean County, to consecutive terms of 30 years without parole and 20 years with a 10 year period of parole ineligibility.  (10-21-99 Mem. Op. at 2 n.2.)

Milne's trial counsel, Bonnie Richman, filed an affidavit dated
January 19, 1993, stating, <u>inter</u> <u>alia</u>, (1) why she did not pursue
a diminished capacity defense and (2) that Milne "seemed
completely disinterested in what was going on in the courtroom .
. . and at times he almost seemed catatonic."  (App. to Milne
Br., Vol I., Ex. 21a, Richman Aff., at 53a-55a.)

Judge Giovine denied Milne's first PCR petition in its
entirety, on March 16, 1993.  (10-5-04 Berman Letter, at 2.)
Milne appealed from the denial of his first PCR petition to the
Appellate Division, "challenging the trial court's failure to
hold an evidentiary hearing on his Mellaril and Sixth Amendment
claims."  (9-4-97 Milne Br. at 5.)  The Appellate Division
affirmed Judge Giovine's decision on April 19, 1994.  (10-5-04
Berman Letter, at 2.)  The New Jersey Supreme Court denied
Milne's petition for certification on November 16, 1994.  (<u>Id.</u>)

Milne filed a writ of habeas corpus (the "habeas petition"),
pursuant to Section 2254(a), in this Court on April 18, 1997.
(10-21-99 Mem. Op. at 4.)  Milne claimed that he was unlawfully
confined because he was denied: (1) due process of law by
N.J.S.A. § 2C:4-2, which placed upon him the burden of proving by
a preponderance of the evidence that he suffered from a
diminished capacity ("the <u>Humanik</u> claim"); (2) due process of law
as a result of the State's administering him the antipsychotic
drug, Mellaril, throughout his trial ("the Mellaril claim"); and
(3) effective assistance of counsel at trial because his counsel

4

failed to pursue the defense of diminished capacity ("the Sixth Amendment Claim").  (Id. at 4-5; see App. Milne Br., Vol. I, Ex. 21a, Habeas App., at 56a-62a.)  Discovery with respect to Milne's Mellaril claim was completed by April 7, 1998.  (10-5-04 Berman Letter, at 3.)  This Court dismissed without prejudice and without an evidentiary hearing Milne's habeas petition for failure to exhaust state remedies with respect to the Humanik claim on October 21, 1999.  (10-21-99 Mem. Op. at 14, 17.) However, this Court stayed this matter pending the New Jersey state courts' consideration of Milne's Humanik claim.  (Id.)

Milne filed a second PCR petition ("the second PCR petition") in state court on September 29, 2000.  (10-5-04 Berman Letter, at 4.)  The second PCR petition only raised the Humanik claim, asserting "that [Milne's] 'right to due process was denied by virtue of the unconstitutional burden of proof imposed upon by the New Jersey diminished capacity statute.'"  (Id.)  The petition was denied on May 14, 2001.  (Id.; State's Ex. 21b, 5-14-01 Ord. at 187a.)  The Appellate Division, on December 3, 2002, reversed and remanded.  State v. Milne, 810 A.2d 588 (N.J. App. Div. 2002).  The Appellate Division held that Milne's Humanik claim was not time-barred and required that Milne be afforded an opportunity to prove that he could have presented a triable jury issue regarding a diminished capacity defense at an evidentiary hearing.  Id. at 597-98.

The State then filed a petition for certification to the New Jersey Supreme Court.  (10-4-05 Berman Letter, at 5.)  That petition was granted on January 20, 2003.  <u>State v. Milne</u>, 815 A.2d 480 (N.J. 2003).  The New Jersey Supreme Court reversed, on March 2, 2004, holding that the 5-year time limit for seeking post-conviction relief would not be relaxed as to Milne's <u>Humanik</u> claim.  <u>State v. Milne</u>, 842 A.2d 140, 145-46 (N.J. 2004).  The Court issued an order reopening this matter on July 2, 2004.

## II. <u>Humanik and Culley Decisions</u>

The diminished capacity defense, at the time of Milne's trial, was governed by a version of N.J.S.A. § 2C:4-2, which required a defendant to prove a defense of diminished capacity by a preponderance of the evidence.  That statute was found unconstitutional, in 1989, in <u>Humanik v. Beyer</u>, 871 F.2d 432, 443 (3d Cir. 1989).  The New Jersey Supreme Court directed trial courts, in response to <u>Humanik</u>, not to "require a defendant raising the diminished capacity defense to prove the asserted disease or defect by a preponderance of the evidence" on November 2, 1989 ("the first <u>Humanik</u> directive").  <u>Milne</u>, 842 A.2d at 142. The New Jersey Supreme Court issued the second <u>Humanik</u> directive, which "extended [the first <u>Humanik</u> directive] to appeals as of December 8, 1989, but cautioned that [<u>Humanik</u>] does not require a reversal of every case presenting a diminished-capacity issue because other appellate principles may dictate a different

result" (collectively the "Humanik directives"). Id. (quotations omitted). This second Humanik directive was issued while Milne's direct appeal was pending. Id.

The Appellate Division held in State v. Culley, 595 A.2d 1098, cert. denied, 599 A.2d 164 (1991), that the New Jersey Supreme Court's Humanik directives only applied to pending appeals and future trials, not to PCR petitions. Milne, 842 A.2d at 142. The New Jersey Supreme Court, in 1995, held by implication in State v. Reyes, 658 A.2d 1218, 1222 (N.J. 1995), that a criminal defendant may pursue a Humanik claim in a PCR proceeding. Milne, 842 A.2d at 142-43.

## DISCUSSION

### I.   Standards Governing Milne's Claims

Section 2254 of Title 28, United States Code, provides that a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner has the burden of establishing each claim in the petition. See United States v. Abbott, 975 F.Supp. 703, 705 (E.D. Pa. 1997).

Milne's habeas petition is governed by Section 2254(d) as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). We must give considerable deference to determinations

7

of the state trial and appellate courts.  Duncan v. Morton, 256
F.3d 189, 196 (3d Cir. 2001).  The Court, under Section 2254(d),
cannot grant Milne habeas relief as to a claim that was
adjudicated on the merits in state court proceedings, unless we
find that the adjudication of the claim

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States ["the 'contrary to'
> clause"]; or (2) resulted in a decision that was based
> on an unreasonable determination of the facts in light
> of the evidence presented in the State court proceeding
> ["the unreasonable application clause"].

28 U.S.C. § 2254(d).  We must "presume that the factual findings
of both state trial and appellate courts are correct."  Stevens
v. Del. Corr. Ctr., 295 F.3d 361, 368 (3d Cir. 2002).  See 28
U.S.C. § 2254(e)(1).  This presumption of correctness, however,
"does not apply if the state court[s'] findings are not fairly
supported by the record."  Meyers v. Gillis, 142 F.3d 664, 667
(3d Cir. 1998).  Milne has "the burden of rebutting the
presumption of correctness by clear and convincing evidence."
See 28 U.S.C. § 2254(e)(1).

A state court's decision is contrary to Supreme Court
precedent where the court reaches a "conclusion opposite to that
of law or if the state court decides a case differently than the
Supreme Court has on a set of materially indistinguishable
facts."  Marshall v. Hendricks, 307 F.3d 36, 51 (3d Cir. 2002)
(citing Williams v. Taylor, 529 U.S. 362, 413 (2000)) .  "Under

8

the 'unreasonable application' clause, a federal habeas court may
grant the writ if the state court identifies the correct
governing legal principle from [the Supreme Court's] decisions
but unreasonably applies that principle to the facts of the
prisoner's case." <u>Williams</u>, 529 U.S. at 413.  "[A] federal court
can also grant habeas relief if a state court unreasonably
determined the facts in light of the evidence presented to it."
<u>Marshall</u>, 307 F.3d at 51.  The Court may not grant habeas relief
merely because "we would have reached a different result if left
to our own devices."  <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir.
2000).  We, rather, may only grant the writ if "the state court
decision, evaluated objectively and on the merits, resulted in an
outcome that cannot reasonably be justified under existing
Supreme Court precedent."  <u>Id.</u>

## II.  **Milne's Claims**

Milne seeks relief on three grounds, asserting that he was:
(1) "denied due process of law as a result of the
unconstitutional burden of proof imposed upon him by the New
Jersey diminished capacity statute" — the <u>Humanik</u> Claim; (2)
"denied due process as a result of the involuntary administration
of Mellaril" — the Mellaril Claim; and (3) "denied the effective
assistance of counsel guaranteed him by the Sixth Amendment" —
the Sixth Amendment claim.  (9-4-97 Milne Br. at 7, 17, 25.)

A.   Milne's Humanik Claim

Milne raised the Humanik claim before this Court in his
initial habeas petition filed in 1997.  We, however, stayed
consideration of the petition because Milne had failed to exhaust
his Humanik claim in state court.  (10-21-99 Mem. Op. at 14, 17.)
The New Jersey Supreme Court considered Milne's second PCR
petition relating to the Humanik claim and disposed of the
petition on the grounds that it was procedurally time-barred.
Milne, 842 A.2d at 145-46.  Because the New Jersey Supreme Court
disposed of Milne's Humanik claim on independent and adequate
state procedural grounds, the Court is barred from considering
Milne's Humanik claim on the merits unless Milne "demonstrate[s]
cause for the [procedural] default [in state court] and actual
prejudice as a result of the alleged violation of federal law."
See Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir. 2002).[6]  The
Court finds that Milne has failed to demonstrate cause and
prejudice.  We, accordingly, decline to review Milne's habeas
petition on the merits as it relates to the Humanik claim.

---

[6]  A party may also avoid the effect of a procedural default
in state court by demonstrating that: (1) "[f]ailure to consider
the claims [and his continued incarceration] will result in a
fundamental miscarriage of justice" or (2) the State waived the
procedural default.  Cristin, 281 F.3d at 412.  "To show a
fundamental miscarriage of justice, a petitioner must demonstrate
that he is actually innocent of the crime . . . by presenting new
evidence of innocence."  Id.  The Court will not consider these
grounds because Milne has not raised these arguments in his
habeas petition.

"To show cause and prejudice, a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." Cristin, 281 F.3d at 412 (citations and quotations omitted).  To demonstrate prejudice Milne must show that the errors at his trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).  See Fischetti v. Johnson, 384 F.3d 140, 145 (3d Cir. 2004).  The mere possibility of prejudice is insufficient.  Frady, 456 U.S. at 170.  The Court may hold "an evidentiary hearing to establish cause and prejudice . . . to excuse [petitioner's] procedural defaults" at the state level. Cristin, 281 F.3d at 417.

Milne contends that "[t]he issue is whether [he] can establish cause for having failed to exhaust the Humanik claim once it was rejected at the PCR trial level." (12-13-04 Berman Letter, at 2) (emphasis omitted).  Milne contends that he has established cause for his failure to pursue the Humanik claim on appeal of the first PCR petition because he relied on: (1) the Culley decision, which held that a Humanik claim could not be raised in a PCR proceeding; and (2) the New Jersey Supreme Court's Humanik directives, which provided that while petitioners could raise a Humanik claim in pending and future trials and appeals, the claim could not be raised in PCR proceedings.  (See

11

10-5-04 Berman Letter, at 6-7; 12-13-04 Berman Letter, at 2-3.)
Milne, therefore, asserts that "it was not until 1995 [and the
Reyes decision] that he could have fully pursued the Humanik
claim he raised in a timely manner in his first PCR petition."
(10-5-04 Berman Letter, at 7.)

Milne cites the Appellate Division's decision in State v.
Milne, 810 A.2d 588 (N.J. App. Div. 2004), in support of this
argument and as "fully explain[ing] the cause and prejudice which
warrants [the] Court's consideration of the merits of [his]
Humanik claim."  (10-5-04 Berman Letter, at 6.)  The Appellate
Division stated:

> We conclude that relaxation of the procedural bars
> of prior adjudication and the five-year period are
> warranted in this case. . . . [The Humanik issue]
> unfortunately has evaded forthright consideration to
> date in this case.  Without dispute, the defendant,
> tried as an adult for a crime committed at age fifteen,
> potentially was impeded at trial in pursuing a
> diminished capacity defense by an unconstitutional
> statute, N.J.S.A. 2C:4-2.

> After defendant's trial and the rejection of his
> direct appeals in 1990, the Humanik issue was raised by
> him in a timely manner in his first PCR petition filed
> in July 1992.  The Law Division judge, in March 1993,
> denied this PCR petition on the ground that Humanik did
> not apply to PCR petitions, relying upon State v.
> Culley, [595 A.2d 1098 (App.Div. 1991)].  Appellate
> counsel (not present counsel) for defendant
> inexplicably failed to pursue the Humanik issue on the
> appeal, which was affirmed by this court in August
> 1994.  Our Supreme Court denied certification in
> November 1994. [652 A.2d 174 (1994)].

> In June 1995, eight months after defendant's PCR
> petition was rejected by our courts, our Supreme Court
> rejected Culley, and entertained a Humanik claim in a
> PCR proceeding.  Reyes,[658 A.2d 1218].  Thus, not

> until 1995 was defendant clearly entitled to pursue his
> Humanik claim which he had timely raised in his first
> PCR petition in 1992. . . . Nor do we think it
> appropriate now to deny a plenary hearing in state
> court on the Humanik issue, given the complex
> procedural history in this case.  See State v.
> Afanador, [697 A.2d 529 (1997)].  We do not decide
> whether defendant is entitled to a new trial on the
> issue of his mental state and alleged diminished
> capacity.  We do order a plenary hearing on remand to
> allow defendant the chance to prove that he could have
> presented a triable jury issue, if allowed to do so at
> trial.

Milne, 810 A.2d at 598.

The New Jersey Supreme Court, in State v. Milne, 842 A.2d

140 (N.J. 2004), reversed the Appellate Division, holding that

Milne sat on his rights as to the Humanik claim and could have

raised the claim on appeal of his first PCR petition.  Id. at

144.[7]  The court found that Milne's

> first realistic opportunity to seek relief occurred in
> 1992 when he filed his initial PCR petition.  Although
> that petition included a Humanik claim, defendant
> abandoned that claim on appeal.  Defendant asserts that
> he so acted in good-faith reliance on Culley.  That

---

[7]  The court first noted that Milne "did not raise the
diminished-capacity issue while his direct appeal was pending,
notwithstanding that this Court's Humanik directives seemingly
would have permitted it."  Milne, 842 A.2d at 144.  The court
went on to state, however, that Milne

> could not have reasonably raised the issue in his
> direct appeal given the overlapping nature of that
> appeal and our Humanik directives.  See State v. Nash,
> [317 A.2d 689 (1974)] (stating in different setting
> that 'we hesitate to make the availability of a
> retroactive principle in a criminal context turn on
> whether an attorney has read recent advance sheets').

Id. at 144.

explanation is belied by the fact that the Appellate
Division decided <u>Culley</u> about a year <u>before</u> defendant
filed his petition with the trial court.  In other
words, given the fact that he had included a <u>Humanik</u>
claim when he first filed the petition, defendant
appears not to have been encumbered by <u>Culley</u>.  In any
event, irrespective of how he might have viewed <u>Culley</u>,
nothing prevented defendant from challenging the
effects of that intermediate appellate court decision
before this Court as a different defendant essentially
did in <u>Reyes</u>.

<u>Id.</u> (emphasis in original).[8]

---

[8] The New Jersey Supreme Court found that Milne had a second
opportunity to assert his <u>Humanik</u> claim after the <u>Reyes</u> decision.
<u>Milne</u>, 842 A.2d at 145.  The court stated:

Assuming that the date of the <u>Reyes</u> decision, June 5,
1995, triggered the five-year clock for the filing of
defendant's second PCR petition, defendant exceeded
that time frame when he filed that petition, which is
dated August 16, 2000.  Defendant's cumulative delay
leaves the judiciary with the prospect of evaluating
the propriety of a sixteen-year-old criminal
conviction, with all the difficulties and hardships to
the system that would attend such an endeavor.
Consistent with our prior case law, we cannot sanction
that prospect absent such compelling circumstances. . .
. We reject the notion that defendant did not
appreciate his procedural rights until after being
informed by the federal district court that he might be
entitled to seek State review of his <u>Humanik</u> claim.
That option could have been pursued well before the
federal court's decision and should have been known to
defendant many years ago.  He simply did not avail
himself of it in a diligent fashion.  Additionally, we
cannot help but observe that defendant waited almost a
year after the district court's decision to file his
second PCR petition.  Had he acted more promptly after
the federal court stayed his habeas petition on October
21, 1999, defendant could have filed his second PCR
petition by June 5, 2005, which would have been within
five years of <u>Reyes</u>.  Measured against the extended
backdrop of this case, including two opportunities to
proceed with a <u>Humanik</u> claim within two separate five-
year periods, defendant has provided us no compelling

We agree with the New Jersey Supreme Court — Milne, like the defendant in <u>Reyes</u>, could have challenged the <u>Culley</u> decision and raised the <u>Humanik</u> claim in his appeal from the denial of his first PCR petition.  We reject Milne's contention that he failed to raise the <u>Humanik</u> claim on appeal because he relied on the <u>Culley</u> decision and the New Jersey Supreme Court's <u>Humanik</u> directives.  Milne filed his first PCR petition, in which he asserted the <u>Humanik</u> claim, in 1992, after the <u>Culley</u> decision was published in 1991 and well after the <u>Humanik</u> directives were entered in 1989.  Milne, hence, was not impeded by this contrary case law in including a <u>Humanik</u> claim in his first PCR petition; thus, it makes little sense how he was impeded by this precedent when he filed his appeal of the first PCR petition.[9]

---

    reason to relax the procedural bar of Rule 3:22-12.
    Under the totality of the circumstances, we see no
    injustice in that conclusion.

<u>Id</u>.

[9]  We find that the first ground on which the New Jersey Supreme Court reversed the Appellate Division relating to Milne's failure to exhaust the <u>Humanik</u> claim on appeal of the first PCR petition is sufficient to demonstrate a lack of cause.  We, accordingly, do not consider the New Jersey Supreme Court's finding that Milne had a second opportunity to assert his claims after the court filed <u>Reyes</u>.  <u>See</u> <u>supra</u> note 8.  If, however, we were to consider this ground, we would reach the same conclusion as articulated by New Jersey Supreme Court.  We, accordingly, would find that Milne's failure to timely raise the <u>Humanik</u> issue in his second PCR also demonstrates a lack of cause warranting the Court's consideration of the <u>Humanik</u> claim.

We decline to conduct an evidentiary hearing, as Milne urges, as to the issue of why Milne's appellate counsel failed to pursue the <u>Humanik</u> claim on appeal because such a hearing is unnecessary. (<u>See</u> 12-13-04 Berman Letter, at 2-3.) We hold that Milne has failed to demonstrate cause for his failure to raise the <u>Humanik</u> claim on appeal of his first PCR petition. We, therefore, decline to consider Milne's <u>Humanik</u> claim on the merits.

B.   <u>Milne's Mellaril Claim</u>

Milne contends that "the State's involuntary administration of Mellaril denied [him] the opportunity to fully participate in an adequate presentation of his defense and to testify on his own behalf." (9-4-97 Milne Br. at 17.) Milne, therefore, asserts that his conviction should be reversed and he should be afforded a new trial. (<u>Id.</u>; 10-5-04 Berman Letter.) Milne argues that his constitutional rights were violated in contravention of <u>Riggins v. Nevada</u>, 504 U.S. 127 (1992) and <u>Sell v. United States</u>, 539 U.S. 166 (2000). (9-4-97 Milne Br. at 17-25; 10-5-04 Berman Letter, at 9-10.) Milne asserts that because the lower state courts failed to conduct a hearing to evaluate the factors enumerated in <u>Sell</u>, the Court should conduct an evidentiary hearing as to his Mellaril claim. (12-13-04 Berman Letter, at 4-5.)

<u>Riggins</u> recognized that a defendant has an "interest in freedom from unwanted antipsychotic drugs." 504 U.S. at 136. The Court found that "forced medication in order to render a

16

defendant competent to stand trial for murder [is] constitutionally permissible." Sell, 539 U.S. at 178 (describing holding in Riggins). The Riggins court, however, citing Washington v. Harper, 494 U.S. 210 (1990), noted that "forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." Riggins, 504 U.S. at 135. The Court went on to hold that Riggins's constitutional rights were violated, when he was involuntarily administered Mellaril during the course of his trial and requested that its use be terminated, because the district court failed to consider: (1) less intrusive alternatives; (2) whether treatment with the drug was medically appropriate; and (3) whether treatment with the drug was essential for the sake of defendant's own safety or the safety of others. Id. at 135-36.

Sell held that

> Harper and Riggins [] indicate that the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important government trial-related interests. . . . This standard will permit involuntary administration of drugs solely for trial competence purposes in certain instances.

539 U.S. at 179-80.

17

We reject Milne's contention that <u>Riggins</u> and <u>Sell</u> apply here.  (<u>See</u> 9-4-97 Milne Br. at 17-25; 10-5-04 Berman Letter, at 9-10.)  The factors expressed in <u>Riggins</u> and <u>Sell</u> apply where a defendant is involuntarily administered an antipsychotic drug for the purposes of rendering him competent to stand trial.  <u>See</u> <u>Sell</u>, 539 U.S. at 179.  Milne does not contend that he was given Mellaril for the purposes of making him competent to stand trial. (<u>See</u> 9-4-97 Milne Br. at 17.)  Milne, rather, states that the physician at the Ocean County Juvenile Shelter ("the shelter physician") issued him Mellaril "in response to [his] suffering from auditory hallucinations and dissociate events."  (<u>Id.</u>)  We, accordingly, find that <u>Riggins</u> and <u>Sell</u> do not apply here because Milne was not administered Mellaril for the purposes of making him competent to stand trial.

The analysis of Milne's Mellaril claim, therefore, centers on whether Milne was incompetent to stand trial and, in particular, on whether the lower state courts' determinations that Milne was competent to stand trial are entitled to a presumption of correctness.

A competency determination of a state trial or appellate court constitutes a factual finding; therefore, it is entitled to a presumption of correctness.  <u>See</u> <u>Maggio v. Fulford</u>, 462 U.S. 111, 117 (1983) (assuming that competency is a factual determination entitled to a presumption of correctness).  "An implicit finding of fact is tantamount to an express one, such

18

that deference is due to either determination" under AEDPA.
Campbell v. Vaughn, 209 F.3d 280, 285-86 (3d Cir. 2000).  This
presumption of correctness, however, "does not apply if the state
court[s'] findings are not fairly supported by the record."
Meyers, 142 F.3d at 667.  Milne has "the burden of rebutting the
presumption of correctness by clear and convincing evidence."
See 28 U.S.C. § 2254(e)(1).

     "A defendant has a due process right not to be tried while
incompetent."  Jermyn v. Horn, 266 F.3d 257, 283 (3d Cir. 2001)
(citing Pate v. Robinson, 383 U.S. 375, 385 (1966)).  A defendant
is competent to stand trial, if "he has sufficient present
ability to consult with his lawyer with a reasonable degree of
understanding [and if] he has a rational as well as factual
understanding of the proceedings against him."  Dusky v. United
States, 362 U.S. 402, 402 (1960).[10]

---

[10]  The test for competency to stand trial on criminal
charges in New Jersey, codified in N.J.S.A. § 2C:4-4, provides:

     a.  No person who lacks capacity to understand the
     proceedings against him or to assist in his own defense
     shall be tried, convicted or sentenced for the
     commission of an offense so long as such incapacity endures.
     b.  A person shall be considered mentally competent to
     stand trial on criminal charges if the proofs shall establish:
     (1)  That the defendant has the mental capacity to
     appreciate his presence in relation to time, place and
     things; and
     (2)  That his elementary mental processes are such that
     he comprehends:
          (a)  That he is in a court of justice charged with
     a criminal offense;
          (b)  That there is a judge on the bench;
          (c)  That there is a prosecutor present who will

The issue of competency may arise in the context of claims
of procedural or substantive due process violations.  <u>Carter v.
Johnson</u>, 110 F.3d 1098, 1105 (5th Cir. 1997); <u>Walker v. Att. Gen.
of Okla.,</u> 167 F.3d 1339, 1344 (10th Cir. 1999).  A habeas
petitioner may assert a procedural due process claim by alleging
that the state trial court's "procedures were inadequate to
ensure that he was competent to stand trial."  <u>Carter</u>, 110 F.3d
at 1105.  "Due process requires the trial court to inquire <u>sua
sponte</u> as to the defendant's competence in every case in which
there is a reason to doubt the defendant's competence to stand
trial."  <u>Jermyn</u>, 266 F.3d at 283.  <u>See also</u> N.J.S.A. § 2C:4-5
(providing that the trial court, on its own initiative, may

---

    try to convict him of a criminal charge;
        (d)  That he has a lawyer who will undertake to
defend him against that charge;
        (e)  That he will be expected to tell to the best
of his mental ability the facts surrounding him at the
time and place where the alleged violation was
committed if he chooses to testify and understands the
right not to testify;
        (f)  That there is or may be a jury present to
pass upon evidence adduced as to guilt or innocence of
such charge or, that if he should choose to enter into
plea negotiations or to plead guilty, that he
comprehend the consequences of a guilty plea and that
he be able to knowingly, intelligently, and voluntarily
waive those rights which are waived upon such entry of
a guilty plea; and
        (g)  That he has the ability to participate in an
adequate presentation of his defense.

20

appoint a psychiatrist to evaluate a defendant's mental condition).  The trial court must order a competency hearing, even if it is not requested, "where the evidence raises a bona fide doubt as to a defendant's competence."  State v. M.J.K., 849 A.2d 1105, 1114 (N.J. App. Div. 2004) (citing Pate, 383 U.S. at 378).[11]

The state court, in considering whether sufficient evidence has been raised to warrant a competency hearing, may consider the following factors: (a) a defendant's irrational behavior before trial, (b) a defendant's demeanor at trial; and (c) prior medical opinion(s) as to a defendant's competence to stand trial.  State v. Cecil, 616 A.2d 1336, 1339-40 (N.J. App. Div. 1992); United States v. Renfroe, 825 F.2d 763, 767 (3d Cir. 1987).  The court, in considering whether reasonable cause exists to conduct a competency hearing, may also consider an attorney's representations about a client's competency.  Cecil, 616 A.2d at

---

[11]   The New Jersey Supreme Court in State v. Spivey, 319 A.2d 461, 469 (N.J. 1974), stated:

[W]hile the court has the power to order an inquiry in the defendant's mental qualifications to stand trial, failure to exercise the powers will not be reviewed on appeal, unless it clearly and convincingly appears that the defendant was incapable of standing trial. . . . The 'clear and convincing standard of review of a trial court's refusal to grant competency hearing, is however, practically met when there is a 'bona fide doubt' as to defendant's competence to stand trial.

1339; <u>United States v. Jones</u>, 336 F.3d 245, 259 (3d Cir. 2003).[12]
"Whether the evidence raises a bona fide doubt as to a
defendant's competence is often a difficult question as there are
'not fixed or immutable signs which invariably indicate the need
for further inquiry to determine fitness to proceed.'" <u>Cecil</u>,
616 A.2d at 1339 (citing <u>Drope v. Missouri</u>, 410 U.S. 162, 180
(1975)).  The issue of whether a hearing is warranted, therefore,
"must be based upon the facts of the particular case." <u>Renfroe</u>,
825 F.2d at 767.

A petitioner may assert a substantive competency claim in a
subsequent collateral proceeding by alleging that he was tried
and convicted while incompetent at the time of trial.
See <u>Carter</u>, 110 F.3d at 1105-06; <u>Walker</u>, 167 F.3d at 1344.

> A habeas petitioner is entitled to a <u>nunc pro tunc</u>
> evidentiary hearing for the purpose of proving that he
> was incompetent at the time of trial only when he makes
> a showing by clear and convincing evidence to raise
> threshold doubt about his competency . . . . In order
> for him to raise such doubt, he must present facts
> sufficient to positively, unequivocally and clearly
> generate a real and substantial and legitimate doubt
> concerning his mental capacity . . . . This threshold
> burden of proof is extremely heavy.

<u>Carter</u>, 110 F.3d at 1106 (citations and quotations omitted). <u>See
also</u> <u>Walker</u>, 167 F. 3d at 1344 (stating that a petitioner must
demonstrate his incompetency by a preponderance of the evidence

---

[12]  An attorney's representations about her client's
competency are relevant because "defense counsel will often have
the best-informed view of the defendant's ability to participate
in his defense." <u>Jones</u>, 336 F.3d at 259.

and is entitled to a hearing on his substantive incompetency claim if he "presents 'clear and convincing evidence' creating 'a real, substantial and legitimate doubt' as to his competency to stand trial").

The state trial court did not expressly find Milne competent to stand trial.  Nor did the court conduct an evidentiary hearing to assess Milne's competency.  We find that the state trial court's failure to <u>sua sponte</u> convene an evidentiary hearing to assess Milne's competency to stand trial did not violate Milne's procedural due process rights because the evidence before the state trial court, viewed objectively, did not raise a bona fide doubt as to Milne's competency.  <u>See</u> <u>Walker</u>, 167 F.3d at 1345. The state's psychiatric expert, Dr. Robert Sadoff, in a letter to the assistant prosecutor dated June 1, 1987, only several days before the trial began, stated that Milne "is currently competent to proceed legally in that he does understand the nature and consequences of his current legal situation and can work with counsel in preparing his defense."  (State Ex. 12, 6-1-87 Psychiatric Report, at 88A.)  <u>See</u> <u>Cecil</u>, 616 A.2d at 482-83 (trial court did not err in declining to hold a competency hearing where it relied on finding of two out of three psychiatrists that defendant was competent to stand trial).

The defense did not question Milne's competency before, or during, trial.  Nor did the defense's experts opine as to Milne's competency to stand trial; rather, the two psychiatric experts

23

retained by the defense solely opined as to Milne's mental state
at the time of the offense.  Milne's trial counsel, despite
having challenged Milne's conviction on numerous grounds, did not
question Milne's competency to stand trial when moving for a new
trial.  (See Tr. Motion and Sentence, Ex. 18, at 33-35.)[13]

The state trial judge had the opportunity to personally
observe Milne during the course of a two week trial.[14]  See
Cecil, 616 A.2d at 481 (considering fact that two "judges
observed defendant, questioned him, and were convinced he was
competent to stand trial).  The trial judge also had the
opportunity to converse with Milne at the sentencing hearing.
(Tr. Motion and Sentence, Ex. 18, at 28-29.)  The trial judge,
however, did not find it necessary to hold a competency hearing.
See Ford v. Wainright, 477 U.S. 399, 425-26 (1986) ("[I]n order
to have been convicted and sentenced, petitioner must have been
judged competent to stand trial, or his competency must have been
sufficiently clear as not to raise a serious question for the
trial court."); White v. Horn, 54 F.Supp.2d 457, 466 (E.D. Pa.

---

[13]  Counsel, while objecting to the pre-sentence report's
statement that Milne showed no remorse, commented that: "And
also, Judge, I would point that he is on Mellaril which is an
antipsychotic drug which has a tendency to flatten his affect and
make it so that he does not really respond emotionally to
anything, as I think your Honor has seen throughout the course of
the trial."  (Tr. Motion and Sentence, Ex. 18, at 35.)

[14]  The trial, presided over by the Honorable William J.
Huber, began on June 4, 1987, and lasted until June 28, 1987.
(State Supp. Br. at 26.)

1999) ("Even in the absence of an express finding of competence by the state courts, a defendant who alleges insanity in his habeas corpus petition may be presumed to be competent, since the trial court judge would not have otherwise allowed the trial to proceed.").  We, accordingly, find that the evidence before the trial court was insufficient to raise a reasonable, bona fide doubt as to Milne's competency.  We, therefore, hold that the trial court did not violate Milne's procedural due process rights in failing to <u>sua</u> <u>sponte</u> conduct a competency hearing.

Milne asserted a competency claim in his first PCR action before Judge Giovine and the Appellate Division, and these state courts declined to find that he was incompetent at the time of trial.  We find that the findings of these courts are entitled to a presumption of correctness.  Judge Giovine considered Milne's motion for post-conviction relief, in which Milne asserted a Mellaril claim, on March 11, 1993.  (State Ex. 11, Tr. PCR Motion.)  Judge Giovine, in considering Milne's competency claim, held that "nothing now suggests that a bona fide doubt exists as to [Milne's] competency to stand trial or existed at the that time." (<u>Id.</u> at 30.)  The court, in so holding, stated:

> The issue of defendant's competency to stand trial can be raised either prior to trial by either party or by the judge. Further, the issue of defendant's competency is never finally decided, and the Court's responsibility is an ongoing one, and new facts with a passage of time may require a hearing during the trial, citing [<u>State v. Spivey</u>] . . . .
> While the Court has the power to order a competency hearing on its own initiative, its failure

25

to initiate the inquiry will not be reviewed on appeal unless it clearly and convincingly appears, so said [Spivey], that the defendant was incompetent to stand trial.  It is ordinarily expected that the defendant's counsel, who is in a much better position to observe relevant facts concerning the issue, request that an inquiry be made into the defendant's competency at that time.

I should say as well that Judge Huber, a well-respected jurist in this county, sat on that case for weeks, and he was able to observe the defendant each and every day of the trial, and I've got to give deference to that judge's impressions of the defendant at the trial as to whether he had any hint or inkling that the defendant was incompetent to stand trial.  I am sure that if there was any hint of that, he would have raised the matter on the record and would have exhausted whatever he felt would have been appropriate procedures by way of inquiry into the matter.  The clear and convincing- and I'm going to give a great deal of deference to his impressions at the time, which apparently did not lead him to do anything other than properly proceed with trial in his opinion.

The clear and convincing standard of review of a trial court's failure to hold a competency hearing is, however, practically met when there is a, ["]bona fide doubt as to the defendant's competence to stand trial,["] [quoting Spivey] . . .

In the case before the Court, neither the defense counsel nor the Court raised the issue of defendant's competency to stand trial.  The certification of Miss Richman states that, ["]from the outset of the trial, the defendant appeared lethargic and withdrawn, and attempts to communicate with him during the trial were very difficult.["]  He was ["]completely disinterested,["] and did not react to testimony.  He also seemed, she says, catatonic at times. I mean, that's a psychiatric term of art and, quite frankly, I'm not going to-I'm sure the man didn't sit there in a catatonic state.  We all know what a catatonic state is, and that, needless to say, in the opinion of the court, is somewhat gilding the lily.

I see many a defendant, as I'm sure Judge Huber has . . . who sits here completely disinterested with regard to testimony when it comes in, much to the surprise, sometimes the shock, sometimes the chagrin, of the Court, but you observe the defendant whose testimony doesn't seem to bother them at all.

Now, although trial counsel states this now -

certainly there are questions to be raised, she says, as to competency - she did not request a competency hearing during the trial, nor did she raise the issue. She had the most contact with the defendant during the trial.  Nor did she feel that the defendant's competency to stand trial was in serious question.

Clearly, the behavior of the defendant at the trial was not enough to raise in the mind of this Court a bona fide doubt as to the defendant's competency to stand trial.  There weren't any outbursts on the part of the defendant.  There was nothing to real – really unusual, about his behavior.

To hold now after the fact that the defendant ["] may have been incompetent["] to stand trial would be pure speculation on the part of this Court.  If there was serious doubt as to his competency, the trial period was the most logical and appropriate time for the issue to be raised and determined.

The certification of the attorney states that certain conduct was observed by her, but it does not state that she concluded or now concludes that the defendant was incompetent to stand trial.  Since she never raised the issue at trial, this should suggest that she concluded that he was competent.

As the State points out, there were many reasons which may have caused the defendant to be withdrawn if, in fact, his behavior can be characterized as withdrawn during the trial.  One being the hearing of the testimony regarding this brutal incident.  Although the factors listed by the defendant may cause stress, depression, withdrawal, et cetera, nothing now suggests that a bona fide doubt exists as to his competency to stand trial or existed at that time.  And the decision of the parties in the trial and at the trial not to raise a competency issue should govern over speculation on the part of the Court at this time.

(Id. at 26-30.)

The Appellate Division, in considering whether Judge Giovine erred in denying Milne's petition without convening an evidentiary hearing, stated:

The claim of incompetency to stand trial is supported solely by an affidavit of defendant's trial counsel that defendant "appeared lethargic and withdrawn" throughout the trial, "seemed completely

disinterested in what was going on, did not appear to react to testimony or evidence, and at times . . . almost seemed catatonic."  Counsel said that her attempts to communicate with defendant during trial were "very difficult" and that his demeanor and "his ability or unwillingness to discuss matters with me" persuaded her that defendant "would be his own worst enemy if he testified."

Even if that recitation is fully credited, it does not support a finding of incompetency: a defendant's flat affect and apparent disinterest in the proceedings do not justify the conclusion that he is mentally incompetent to stand trial.  See N.J.S.A. 2C:4-4; cf. State v. Auld, 2 N.J. 426, 435 (1949).  Counsel proffered no expert opinion that the conduct she described evidenced incompetency.  Further, the record discloses that a psychiatrist retained by the State reported just four days before trial that defendant "is currently mentally competent to proceed legally in that he does understand the nature and consequences of his current legal situation and can work with counsel in preparing his defense."  Defendant had also retained two psychiatric experts prior to trial; they did not suggest that he was incompetent to stand trial, but offered opinions solely as to his mental state at the time of the killing.  Finally, the trial record contains no suggestion that defendant said or did anything during the course of the trial to arouse any comment or inquiry of the trial judge.  See State v. Spivey, 65 N.J. 21 (1974).  Thus, both on its face and viewed against the background of the trial record, defendant's proffer was insufficient to support a finding of incompetence or to warrant a hearing on the issue.  See State v. Flores, 228 N.J. Super. 586, 589-90 (App. Div. 1988).

(State Ex. 14, 8-19-94 Appellate Division Decision.)

We find that Judge Giovine reasonably considered the relevant facts in light of the evidence before the state trial court and appropriately concluded, without holding an evidentiary hearing and after accurately applying relevant case law, that the evidence failed to raise a bona fide doubt as to Milne's competency.  The Appellate Division appropriately affirmed that

factual finding.  We agree with the state courts - the evidence
in the record does not raise a bona fide doubt as to Milne's
competency at the time of trial.  The state courts' adjudication
of Milne's Mellaril claim did not result in a decision that was
contrary to, or involved an unreasonable application of,
established federal law, nor were the decisions based on a
unreasonable application of the facts.  <u>See</u> 28 U.S.C. §
2254(d)(1), (2).  The Court holds that the factual findings of
the state courts are fairly supported by the record and,
therefore, are entitled to a presumption of correctness.

     We further hold that Judge Giovine's findings as to Milne's
competency to stand trial are entitled to such a presumption,
despite the court's failure to conduct an evidentiary hearing.
<u>See</u> <u>Carter</u>, 110 F.3d at 1107 ("The mere fact that the state court
dismissed the habeas petition on the basis of the affidavits,
without granting an evidentiary hearing, does not disturb the
presumption of correctness under 2254(e)(1).").  Judge Giovine,
as well as the Appellate Division, considered the facts before
the state trial court and trial counsel's affidavit and
appropriately found that an evidentiary hearing was not necessary
to determine whether the evidence raised a bona fide doubt as to
Milne's competency at the time of trial.  We find that the facts
were adequately developed in the record and trial counsel's
affidavit such that the state courts were entitled to render a
factual determination as to Milne's competency to stand trial

without holding an evidentiary hearing.  See Carter, 110 F.3d at 1107 ("In the instant case, we are satisfied that the facts were adequately developed in the record and the affidavits, and the state habeas court was entitled to render a factual determination based solely on the affidavits.").[15]  We, therefore, hold that the state courts' failure to hold a competency hearing did not violate Milne's procedural due process rights.

Milne, to the extent that he asserts a substantive due process claim, fails to establish such a claim for the same

_____

[15]  Milne argues that Judge Giovine's findings are not entitled to a presumption of correctness because he (1) "was not present at trial . . . did not hear from any live witnesses," and (2) speculated that had the trial judge "had any hint or inkling that the defendant was incompetent to stand trial. . .  He would have raised the matter on the record and would have whatever he felt would have been appropriate procedures by way of inquiry in the matter."  (12-13-04 Berman Letter, at 4.)  Milne, in support of this argument, cites Estock v. Lane, 842 F.2d 184, 186-87 (7th Cir 1988), for the proposition that a "state court's competency finding was not entitled to [a] presumption of correctness where [the] finding was made by [a] judge who was not the trial judge, who did not hold an evidentiary hearing, and whose factual determination was inadequately supported by the record."

We reject Milne's argument.  See Carter, 110 F.3d at 1107 ("[A]lthough our prior decisions have characteristically involved cases in which the state habeas judge was the same judge who presided at trial, we have never held that this is a prerequisite to according the presumption of correctness to factual findings based solely on affidavits.  To the contrary, we have recognized that it is necessary to examine in each case whether a paper hearing is appropriate to the resolution of the factual disputes underlying the petitioner's claim.").  We find that Judge Giovine's findings are fairly supported by the record and are entitled to a presumption of correctness, despite that he did not preside at Milne's trial.  We also find that Judge Giovine's consideration of the trial judge's observance of Milne during the trial and failure to order a sua sponte hearing was not inappropriate.  See Ford, 477 U.S. at 425-26; Cecil, 616 A.2d at 481; White, 54 F.Supp.2d at 466.

reasons discussed <u>supra</u>.  Milne has failed to present facts
"sufficient to positively, unequivocally and clearly generate a
real and substantial doubt" as to his competency at the time of
trial.  <u>See</u> <u>Carter</u>, 110 F.3d at 1106.  The Court, therefore,
finds that the state courts' determinations that Milne was not
incompetent at the time of trial are fairly supported by the
record and, therefore, are entitled to a presumption of
correctness.  We thereby reject Milne's contention that he was
tried while incompetent.  (<u>See</u> 9-4-97 Milne Br. at 17.)  We,
accordingly, also reject Milne's contention that the Court should
conduct an evidentiary hearing to assess the merits of his
Mellaril claim.  (<u>See</u> 12-13-04 Berman Letter, at 5.)  <u>See United</u>
<u>States ex rel. Shank v. Pa.</u>, 461 F.2d 61, 62 (3d Cir. 1972) ("A
federal district court may, within its discretion, dismiss a
petition for writ of habeas corpus without a hearing if
petitioner was afforded a fair and adequate hearing in a state
court and if the decision of the state court is fairly supported
by the record.").

     C.   <u>Milne's Ineffective Assistance of Counsel Claim</u>

    Milne alleges "in his habeas petition that he was denied his
Sixth Amendment right to the effective assistance of [trial]
counsel because his attorney failed to pursue a diminished
capacity defense on his behalf." (12-13-04 Berman Letter, at 5.)

    Ineffective assistance of counsel claims are mixed questions
of law and fact.  <u>McAleese v. Mazurkiewicz</u>, 1 F.3d 159, 166 (3d

Cir. 1993).  A state court's findings of historical fact made in
the course of evaluating an ineffective assistance of counsel
claim are entitled to a presumption of correctness, under Section
2254(d), so long as the findings are fairly supported by the
record.  Id.; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir.
1996).  A state court's conclusion that counsel rendered
effective assistance, however, is not entitled to such a
presumption under Section 2254(d).  Berryman, 100 F.3d at 1094
(reasoning that the "ultimate question of counsel's effectiveness
is outside of [Section] 2254's domain because of its uniquely
legal dimension," in that it "requires the application of a legal
standard to the historical-fact determinations").  The petitioner
has the burden of rebutting this presumption by clear and
convincing evidence.  28 U.S.C. § 2254(e)(1).

     The Sixth Amendment provides in pertinent part: "In all
criminal prosecutions, the accused shall enjoy the right . . . to
have the Assistance of Counsel for his defense."  U.S. Const.
amend. VI.  A defendant has a Sixth Amendment right not just to
counsel, but to "'reasonably effective assistance' of counsel."
United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992) (quoting
Strickland v. Washington, 466 U.S. 668, 687 (1984)).  The Supreme
Court in Strickland has set forth a two-pronged test for
evaluating claims of ineffective assistance of counsel:

          First, the defendant must show that counsel's
          performance was deficient.  This requires showing that
          counsel made errors so serious that counsel was not
          functioning as the "counsel" guaranteed the defendant

by the Sixth Amendment.  Second, the defendant must
show that the deficient performance prejudiced the
defense.  This requires showing that counsel's errors
were so serious as to deprive the defendant of a fair
trial, a trial whose result is reliable.  Unless a
defendant makes both showings, it cannot be said that
the conviction or death sentence resulted from a
breakdown in the adversary process that renders the
result unreliable.

466 U.S. at 687.  The petitioner has the burden of proving both

Strickland prongs.  V.I. v. Nicholas, 759 F.2d 1073, 1081 (3d

Cir. 1985).

To satisfy the first prong of Strickland, the petitioner

must overcome the strong presumption that counsel has rendered

adequate assistance and that "the challenged action might be

considered sound trial strategy."  466 U.S. at 689 (quotations

omitted).  "The proper measure of attorney performance [is]

simply reasonableness under prevailing professional norms."  Id.

at 688.  A defendant asserting a claim of ineffective assistance

of counsel must "identify the acts or omissions of counsel that

are alleged not to have been the result of reasonable

professional judgment."  Id. at 690.  The Court, in evaluating

the objective reasonableness of counsel's performance, must be

"highly deferential to counsel's reasonable strategic decisions

and guard against the temptation to engage in hindsight."

Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002) (citing

Strickland, 466 U.S. at 689-90) (quotations omitted).

The second prong of the Strickland test requires the

petitioner to show that counsel's deficient performance

33

prejudiced the defense.  McAleese, 1 F.3d at 166.  "An error by
counsel, even if professionally unreasonable, does not warrant
setting aside the judgment of a criminal proceeding if the error
had no effect on the judgment."  Strickland, 466 U.S. at 691.
See United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989) ("The
effect of counsel's inadequate performance must be evaluated in
light of the totality of the evidence at trial: a verdict
conclusion only weakly supported by the record is more likely to
have been affected by errors than one with overwhelming record
support.") (quotations omitted).  The petitioner must show that
"there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."  Strickland, 466 U.S. at 694.  "A reasonable
probability is a probability sufficient to undermine confidence
in the outcome."  Id.

    Judge Giovine found that "the failure to raise the defense
of insanity or diminished capacity in the testimony which the
defense counsel chose to put before the jury, fall[s] under the
domain of trial tactics and strategies."  (State Ex. 11, Tr. PCR
Motion, at 34.)  Judge Giovine, in so finding, cited trial
counsel's affidavit noting that counsel stated "that she didn't
feel under the circumstances that either defense should be
pursued after both were examined by her as possible defenses."
(Id.)  The Appellate Division, after citing trial counsel's
affidavit, found that the facts established that trial counsel

34

made a "choice of trial strategy."  (State Ex. 14, 8-19-94
Appellate Division Decision, at 4.)  Findings that counsel had a
trial strategy are findings of fact to which we must afford the
presumption of correctness so long as those factual findings are
supported by the record.  Berryman, 100 F.3d at 1095.  The Court
finds that these factual findings are supported by the record.
We, accordingly, presume that the state courts' factual findings,
that trial counsel's decision on whether to pursue a diminished
capacity defense was trial strategy, are correct.[16]

The Court, giving due deference to the factual findings made
by the state courts, finds that trial counsel's failure to raise
a diminished capacity defense did not constitute ineffective
assistance of counsel.  We agree with the state courts that trial
counsel's decision to forgo a diminished capacity defense and
instead merely pursue a self-defense justification was based on
trial strategy.  Trial counsel's affidavit testimony proves this.
Trial counsel, in her affidavit, attests that:

---

[16]  The state courts also held that trial counsel's trial
strategy was reasonable and did not constitute ineffective
assistance of counsel.  (See State Ex. 11, Tr. PCR Motion, at 34
(stating that "it cannot be said . . . that [trial counsel] acted
unreasonably under the circumstances here); State Ex. 14, 8-19-94
Appellate Division Decision, at 4 (stating that even if trial
counsel's affidavit testimony is fully credited, "those facts
would not establish that counsel's reasoned judgment and choice
of trial strategy fell below an objective standard of
reasonableness").)  We, however, do not afford these findings a
presumption of correctness.  See Berryman, 100 F.3d at 1095
(stating "the question of whether counsel's strategy was
reasonable goes directly to the performance prong of the
Strickland test;" therefore, it is not entitled to a presumption
of correctness).

> Upon reviewing all of the psychological and psychiatric reports, it became apparent that we would not be able to meet the requirements of an insanity defense. However, the question of whether to pursue a diminished capacity defense was much closer.  Given the differences in diagnosis among the doctors, I did not believe that the defense would be able to sustain its burden of proving the existence of a mental disease or defect by a preponderance of the evidence, as required by the diminished capacity statute at that time. Therefore, the diminished capacity defense was not pursued at trial.

(App. Milne Br., Ex. 21a, Richman Aff., at 53a-55a.)

We further find that trial counsel's tactical decision to not pursue a diminished capacity defense was objectively reasonable under prevailing professional norms.  Trial counsel, prior to trial, reviewed the reports of mental health experts. (See id.)  Two experts, both hired by the defense, opined that Milne was suffering from a mental disease or defect at the time of the offense.  (See supra note 2.)  Another expert, who was hired by the state, opined that Milne was not suffering from a psychotic illness.  (See supra 2.)  We find that trial counsel's performance, where she considered these expert reports and whether to present a diminished capacity defense, was reasonable, particularly given the burden of persuasion placed on the defendant at the time of his trial.  Trial counsel's presentation of a self-defense justification was consistent with Milne's confession to the police and statements to three mental health experts that he acted in self defense.  (See supra notes 2 and 3.)  Trial counsel's choice to pursue a self-defense justification, therefore, even without the benefit of calling

36

Milne to the stand, was a reasonable tactical decision.[17]

    We, in exercising our discretion, decline to satisfy
Milne's request that we convene an evidentiary hearing to
evaluate the merits of Milne's ineffective assistance of counsel
claim.  (See 12-13-04 Berman Letter, at 5-6.)  See United States
ex rel. Shank, 461 F.2d at 62.[18]

———————————————

[17]  We need not address the second prong of the Strickland
test because we hold that Milne has failed to satisfy the first
prong.  See Strickland, 466 U.S. at 697 ("[T]here is no reason
for a court deciding an ineffective assistance of counsel claim .
. . to address both components of the inquiry if the defendant
makes an insufficient showing on one.").  Assuming arguendo that
we were to address this second prong, we would find that Milne
has failed to demonstrate that he has suffered prejudice as a
result of trial counsel's alleged ineffective assistance of
counsel.

[18]  We find, to the extent that Milne alleges that the state
courts erred in failing to conduct an evidentiary hearing as to
his incompetency claim and hear testimony from trial counsel,
that such an argument is without merit.  (See 12-13-04 Berman
Letter, at 5 ("Remarkably, in all these years, no court has ever
heard testimony from Ms. Richman. . . . But this Court should not
dismiss [p]etitioner's claim based upon a 'finding' by a judge
who never even heard from Milne's trial attorney, and which
otherwise has absolutely no evidentiary basis.").)
The Supreme Court of New Jersey has recognized that whether
to hold an evidentiary hearing in consideration of a post-
conviction relief petition is a matter of judicial discretion.
State v. Preciose, 609 A.2d 1280, 1286 (N.J. 1992).  Trial courts
should ordinarily grant evidentiary hearings to resolve claims of
ineffective assistance of counsel if a defendant has presented a
prima facie claim to support post-conviction relief.  Id.  Trial
courts, in considering whether a defendant has established a
prima facie case, should view the facts in the light most
favorable to the defendant.  Id.  To establish a prima facie
claim of ineffective assistance of counsel, a defendant must
demonstrate the reasonable likelihood of succeeding under the
test set forth in Strickland.  Id.  Milne, as discussed supra,
did not establish a prima facie claim of ineffective assistance
of counsel.  We agree with the state courts that Milne's
ineffective assistance of claim is without merit; therefore, he
was not entitled to an evidentiary hearing.

## <u>CONCLUSION</u>

The Court, for the reasons stated <u>supra</u>, will deny Milne habeas corpus relief and the writ will not issue.  An appropriate order and judgment will be issued.


                                             _____s/ Mary L. Cooper_____
                                             **MARY L. COOPER**
                                             UNITED STATES DISTRICT JUDGE